**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EDWARD E. BINTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-738-GBW |
| | ) | |
| THE FEDERAL EMERGENCY MANAGEMENT AGENCY, THE DEPARTMENT OF HOMELAND SECURITY, and DEANNE CRISWELL, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF**
**<u>IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT</u>**


DAVID C. WEISS
UNITED STATES ATTORNEY

Claudia L. Pare
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19899
(302) 573-6603
claudia.pare@usdoj.gov
*Counsel for Defendants*

Of counsel:

John M. Ebersole
Attorney, Office of Chief Counsel
U.S. Department of Homeland Security,
Federal Emergency Management Agency,
500 C Street, SW
Washington, DC, 20472


Dated: September 20, 2023

# TABLE OF CONTENTS


I. INTRODUCTION .......................................................................................................1

II. ARGUMENT.............................................................................................................1

A. Plaintiff Has Not Shown FEMA's Determination Was Arbitrary or Capricious ..........1

1. Plaintiff has not demonstrated that FEMA's conclusion regarding Hurricane Sandy and Winter Storm Jonas was arbitrary or capricious ..............................1

2. Plaintiff has not shown that FEMA's conclusion that oceanfront properties are revetted was arbitrary or capricious .................................................................2

3. Plaintiff has failed to establish that FEMA's use of the historical PFD line was arbitrary or capricious .........................................................................................2

4. Plaintiff has not shown that FEMA's erosion methodology was arbitrary or capricious .............................................................................................................4

5. Plaintiff has not shown that FEMA's wave runup calculations were arbitrary or capricious.........................................................................................................6

6. Plaintiff's alternative analysis does not include all required information .........6

B. Nothing About FEMA's Post-Remand Actions Violated the Court's Order ................7

C. Plaintiff's Unreasonable Delay Claim Fails for Three Separate Reasons ....................8

D. Should the Court Find Fault with FEMA's Determination, the Only Available Remedy is Remand .......................................................................................................8

III. CONCLUSION.........................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bintz v. Fed. Emergency Mgmt. Agency*, 413 F. Supp. 3d 349 (D. Del. 2019) .......................... 7, 9

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) .......................... 9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......................... 9

*Parkell v. Frederick*, No. CV 15-718-LPS, 2019 WL 1435884 (D. Del. Mar. 31, 2019) .......... 3, 7

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .......................... 10

**Statutes**

5 U.S.C. § 553(b)(3)(A) .......................... 3

42 U.S.C. § 4101(a) .......................... 8

42 U.S.C. § 4104(b) .......................... 9

42 U.S.C. § 4101(e) .......................... 8

42 U.S.C. § 4101(f) .......................... 8

42 U.S.C. § 4104(b) .......................... 9

42 U.S.C. § 4104(g) .......................... 9

42 U.S.C. § 4104(f) .......................... 10

**Regulations**

44 C.F.R. § 59.1 .......................... 4

44 C.F.R. Part 65 .......................... 7

44 C.F.R. § 67.6(b)(2) .......................... 6

**Rules**

D. Del. L.R. 7.1.3(a)(4) .......................... 1

D. Del. L.R. 7.1.3(c)(2) .......................... 3, 7

## I. INTRODUCTION

In the 20 pages used for his reply, *c.f.* D. Del. L.R. 7.1.3(a)(4), Plaintiff repeats arguments already made and introduces arguments never seen before. One thing he remains unable to do, however, is carry his burden to show that FEMA's analysis was arbitrary or capricious.

## II. ARGUMENT

### A. Plaintiff Has Not Shown FEMA's Determination Was Arbitrary or Capricious

Plaintiff must demonstrate that FEMA acted arbitrarily and capriciously in determining that its flood mapping analysis was scientifically and technically correct. He has not, and his arguments to the contrary are not sufficient to overturn FEMA's determination.

1. <u>Plaintiff has not demonstrated that FEMA's conclusion regarding Hurricane Sandy and Winter Storm Jonas was arbitrary or capricious</u>

Plaintiff remains under the misconception that his method for determining storm return frequencies is scientifically more correct than FEMA's. He is wrong. For the reasons explained in FEMA's opening brief, D.I. 24, at 11-13, FEMA, unlike Plaintiff, used a methodology that does not rely purely on historical storm records because the historical record by nature does not capture the possibilities of storm surge impacts for rare events like hurricanes. *See* FEMA, "Coastal Storm Surge Analysis: Storm Forcing," at 5, https://erdc-library.erdc.dren.mil/jspui/handle/11681/7330 ("The occurrence of hurricanes in the FEMA Region III domain is rare . . . . Those hurricanes that have impacted the region during the past 100 years or so, for which data are available represent a very small subset of the hurricanes that are possible."). FEMA's methodology uses more sophisticated study data (that Plaintiff does not question the accuracy of) that accounts for wider regional climatology and a larger universe of storm data than Plaintiff's.[1] Moreover, the return

[1] Plaintiff also misstates FEMA's argument. He says, "FEMA argues that 'Lewes is more sheltered than South Bethany.'" D.I. 25, at 4. The full quote is actually "*Plaintiff argues* FEMA's comparison is inappropriate because Lewes is more sheltered than South Bethany." D.I. 24, at 12

periods of the SWELs must be internally consistent. As FEMA has explained, the derivation of the 1-percent SWEL must be based on the same methods as the derivation of the return periods for historical storms. Plaintiff's approach inappropriately mixes and matches methods. FEMA did not act arbitrarily or capriciously by using this methodology and then applying the resulting SWELs throughout the study.

2. Plaintiff has not shown that FEMA's conclusion that oceanfront properties are revetted was arbitrary or capricious

In his reply, Plaintiff essentially repeats all his arguments regarding the 1999 Revetment. Plaintiff acts as if he definitively established that the revetment was installed only at six properties based upon his own review of South Bethany *meeting minutes*. He has overstated what these minutes prove (or do not prove). In any event, as already stated in its opening brief, FEMA based its decision upon credible information from an authoritative source—the Delaware Department of Natural Resources and Environmental Control—regarding the revetment along Ocean Drive. D.I. 24, at 13-15. FEMA did not act arbitrarily and capriciously in doing so.

3. Plaintiff has failed to establish that FEMA's use of the historical PFD line was arbitrary or capricious

FEMA identified the PFD in South Bethany consistent with its practice of looking to regional historic dune features. D.I. 24, at 15-16. Plaintiff claims that nothing in the regulation allows FEMA to "leap back in time" to find a historical PFD. D.I. 25, at 7. But FEMA's standard practice is "to follow the historical PFD line for LOMRs and new coastal analyses." AR 2340.

---

n.14 (emphasis added). He uses this misquote to accuse FEMA of using post-hoc rationalizations to defend its methodology. Not so. Again, FEMA compared measured water levels of storms from the NOAA Lewes tide gauge to the calculated frequency data from the Region 3 SSS used in South Bethany. *Id.* at 11-13. The intention of the footnote Plaintiff misquotes was to demonstrate that FEMA chose the Lewes gauge because there is no tide gauge in South Bethany and the Lewes gauge is close and is more hydraulically connected than the other close gauge in Ocean City, MD.

FEMA Standard 619 specifically provides that, when revising, the dune feature "must be as continuous as, or more continuous than, the effective PFD and provide an accurate representation of the regional dune feature." AR 877. Plaintiff again argues that the degradation of the historic dune and construction of a man-made dune justifies a delineation in South Bethany that is not consistent with the effective regional feature and the historic local dune feature. But this is entirely at odds with FEMA practice and policy, specifically Standard 619. Plaintiff then argues—for the first time—that Standard 619 is invalid. D.I. 25, at 7. This Court should ignore this new argument. D. Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."); *see also Parkell v. Frederick*, No. CV 15-718-LPS, 2019 WL 1435884, at *1 n.1 (D. Del. Mar. 31, 2019) ("Defendant filed a reply brief, which arguably contains new arguments not raised in his opening brief, which should not be considered.").[2]

Plaintiff next says that FEMA's PFD is invalid because prior LOMRs for Sussex County identified no PFD in South Bethany. D.I. 25, at 9. But prior effective maps did not identify PFDs because FEMA guidance had not established that practice yet. Coastal flood studies only began to analyze and map dune ridge systems after FEMA published rules and definitions for treating flood hazards near coastal sand dunes on October 1, 1988. AR 1700, 1869. And the delineation of PFD lines was not always a component of flood hazard. Consistent with then-existing guidance, South

[2] Because Plaintiff did not raise this issue in his administrative appeal either, he has also not exhausted his administrative remedies. But even if this Court were to entertain the argument, it should find it meritless. Standards constitute *policy* and do not require a full notice and comment process. 5 U.S.C. § 553(b)(3)(A). They establish processes that allow FEMA to engage in flood hazard mapping in a consistent manner, not legally enforceable rights or obligations. They are updated on an annual cycle with draft standards first published on FEMA's website, and final versions published on FEMA's website after an opportunity for public comment. Standard 619 is not invalid under the APA.

Bethany's first coastal hazard analysis from the 1970s does not have a PFD line. The next analysis conducted in 1992 also did not delineate a PFD line; however, it *did* note the presence of a dune and record its features. More specifically, this study showed a slope changing point just seaward of Ocean Drive (which provides additional justification for FEMA's historic delineation of the dune). AR 651. The 2005 FIRM was a digitization of prior paper maps and not an updated analysis, so it relies on the same data from 1992. Consequently, the presence of a PFD in the most recent LOMR reflects changes in mapping practices, not, as Plaintiff suggests, that FEMA has somehow fabricated the existence of this regional feature in South Bethany.

4. <u>Plaintiff has not shown that FEMA's erosion methodology was arbitrary or capricious</u>

Once more, FEMA selected a modified erosion method after evaluating the standard erosion method and determining the results of that method were not consistent with observed historical erosion and historical storm evidence. D.I. 24, at 16-18. In reply, Plaintiff baldly states that "no damage or flooding has occurred after the 2008 USACE nourishment project, unless (1) dune erosion . . . is 'damage,' and (2) the pooling of water landward of the dune at the southern end of Ocean Drive due to a limited dune breach . . . is 'flooding.'" D.I. 25, at 10. Post-storm erosion is indeed damage, and the "pooling of water" can surely be described as flooding. 44 C.F.R. § 59.1 (defining flooding as "general and temporary condition of partial or complete inundation of normally dry land areas"). Both damage and flooding have occurred since 2008.[3] *See, e.g.*, AR 2320. In any event, contrary to Plaintiff's argument, the extensive history of damage

---

[3] And the Town of South Bethany seems to agree. *See* Town of South Bethany, "Coastal Storm Impact – May 2022," https://southbethany.delaware.gov/2022/05/12/coastal-storm-impact-may-2022/ ("The impact from the coastal storm that occurred over the weekend caused substantial damage to the beach in South Bethany. The Department of Natural Resources and Environmental Control (DNREC) assessed the beach and determined that *South Bethany has the most severe dune erosion and debris area of the coastal communities*." (emphases added)).

and flooding in South Bethany (even that occurring before 2008) is certainly relevant to FEMA's analysis in South Bethany, and it should not be ignored because of dune construction—which FEMA defines as a "*temporary* shoreline disturbance."[4] The point of citing all these examples of storms that caused erosion, damage, flooding, and sand loss to South Bethany (even after nourishment efforts) is to show that these kinds of storms happen frequently and that the standard erosion method underestimates the coastal hazard.

In its Appeal Resolution Letter, FEMA provided examples of counties in New Jersey in which FEMA used non-standard erosion methodologies and provided one specific dune erosion profile from Beach Haven as an example. *See* AR 883. In his reply, Plaintiff took the Beach Haven profile and drew lines on it that purportedly show results from South Bethany. D.I. 25, at 11. As an initial matter, his figure has no identified scientific basis and is not a proper engineering analysis. More importantly, his argument demonstrates a fundamental misunderstanding of what erosion profiles depict. The intention of the modified erosion methodology is to incorporate the site-specific erosion characteristics. South Bethany's erosion profile will look different than Beach Haven's: the two are in different states separated by a large bay, were modeled using different water levels from separate storm surge studies, and vary in shoreline characteristics, dune volumes, storm occurrence, water levels, and resilience to coastal hazards. No relevant comparison has been, or should be, made between these two locations without detailed justification. And drawing results from one location on a plot for another location is misleading and incorrect.

---

[4] *See* FEMA, "Beach Nourishment and Dune Construction," https://www.fema.gov/sites/default/files/documents/fema_beach-nourishment-dune-construction_fact-sheet_5-24-2021.pdf.

5. Plaintiff has not shown that FEMA's wave runup calculations were arbitrary or capricious

The state of the science related to wave setup has evolved over time to its current state where a coupled model dynamically simulates the linked processes of waves and storm surge. That state-of-the-art model, 2D ADCIRC+SWAN, was used by FEMA in this study, as well as consistently in many others along the Atlantic and Gulf coasts, including the models for South Bethany and all areas of the effective Sussex County FIS. Despite this, Plaintiff asserts that FEMA should remove wave setup. But the removal of wave setup from the ADCIRC+SWAN-based SWEL is not feasible given the complex statistical analysis used in the model (the setup contributions are not tied to a specific event but are built into the resulting statistics). And FEMA is not prepared to make rudimentary assumptions as Plaintiff suggests in an attempt to remove wave setup—trying to remove wave setup using a methodology other than the combined modeling and statistics does not accurately capture the amount of wave setup within the SWEL result and risks removal of some of the storm surge component from SWEL, erroneously reducing the flood risk.

6. Plaintiff's alternative analysis does not include all required information

FEMA rejected Plaintiff's methodology and analysis, in part, because it did not include all the information necessary for FEMA to determine whether Plaintiff's proposed analysis would result in superior flood hazard determinations.[5] D.I. 24, at 22. Plaintiff now seeks to fault FEMA for not delaying this process even further so that Plaintiff could submit all the information he was required to submit in the first place. *See* 44 C.F.R. § 67.6(b)(2) (providing that if an appellant

---

[5] FEMA also rejected his analysis because he incorrectly categorized the return periods of historic storms, ignored historical data that demonstrates that South Bethany has been severely damaged from flooding and erosion, and did not account for the extent of damage and flooding in South Bethany. AR 885.

alleges that they have conducted a superior analysis, the appellant "must . . . [p]rovid[e] background technical support for the changes indicating why the appellant's application should be accepted as more correct"). There is no requirement that FEMA request additional data from appellants when their data is lacking.[6] To the extent Plaintiff now has additional data, he can apply for a map revision at any time under 44 C.F.R. Part 65.

### B. Nothing About FEMA's Post-Remand Actions Violated the Court's Order

Plaintiff continues to cling to his exceptionally limited view of the Court's opinion in *Bintz I*. But the Court clearly stated that FEMA "acted arbitrarily and capriciously and not in accordance with law in developing the base flood elevations for *South Bethany* in the *2015 Preliminary Map*," reasoning that "discrepancies in the administrative record combined with FEMA's myriad unsupported conclusions preclude the court from identifying a rational chain of supported inferences leading to the *2015 Preliminary Map*." *Bintz v. Fed. Emergency Mgmt. Agency*, 413 F. Supp. 3d 349, 366 (D. Del. 2019) (emphases added). Because the Court held FEMA had acted arbitrarily and capriciously and not in accordance with the law in developing the map, FEMA took action to rescind that map.[7] This is precisely the action contemplated by the Court's ruling. Plaintiff attempts to muddy the Court's clear language, stating that the Court only "referenc[ed] South Bethany's flood map in some instances" "to facilitate discussion." D.I. 25, at 16. This argument—that the Court did not actually mean what it said—makes no sense.[8]

---

[6] In his introduction, for the first time, Plaintiff argues that FEMA failed to provide him with a 30-day period to review the Appeal Resolution Letter. Again, this is a new argument that should not be considered. *See* D. Del. L.R. 7.1.3(c)(2); *Parkell*, 2019 WL 1435884, at *1. It also fails as FEMA is not required to provide this period and in practice does not provide it in LOMR appeals.

[7] Despite Plaintiff's contention that FEMA could have repealed the flood map only with respect to Transect 1610, this is not a real solution and there is no feasible way to do this. *See* D.I. 24, at 7 n.10. Moreover, the Court did not prescribe *how* FEMA should repeal the map.

[8] Plaintiff briefly tries to argue that FEMA also violated the Court's mandate by failing to explain the use of a non-standard methodology in South Bethany even though neighboring towns currently apply the standard erosion methodology. For the reasons detailed in its opening brief, D.I. 24, at

### C. Plaintiff's Unreasonable Delay Claim Fails for Three Separate Reasons

As laid out in FEMA's opening brief, Plaintiff's claim that FEMA engaged in unreasonable delay fails for at least three reasons: (1) his argument is moot; (2) this Court cannot compel FEMA to engage in discretionary mapping activities; and (3) FEMA did not engage in unreasonable delay. D.I. 24, at 25-29. Nothing in Plaintiff's reply changes this. Notably, Plaintiff does not even attempt to engage with the first reason (he cannot). In response to the second, after quoting the same phrases FEMA did in its opening brief, Plaintiff concludes FEMA has a duty to update South Bethany's flood map. But once more, the language of the statute makes clear that FEMA has discretion to issue and update flood maps. *See* 42 U.S.C. § 4101(a), (f). Although there is a requirement that FEMA assess the need to update maps every 5 years, *id.* § 4101(e), there is *not* a requirement to actually update the maps after each consideration. Moreover, even where FEMA identifies a need to update a map, the statute provides no timetable for completing the process to update the map. Finally, as to the third reason, Plaintiff again tries to suggest that FEMA has delayed 6.5 years. The 2021 LOMR became effective less than two years after FEMA decided to engage in the remapping for South Bethany. Given the mapping process is highly technical and that this specific process was slowed by COVID-19 and Plaintiff's own actions, FEMA's timeline was not unreasonable.

### D. Should the Court Find Fault with FEMA's Determination, the Only Available Remedy is Remand

Plaintiff advances several reasons he believes he is entitled to a catalogue of remedies. But he is wrong. And as detailed in FEMA's opening brief, should this Court find FEMA acted arbitrarily and capriciously, the *only* appropriate remedy is remand back to FEMA. D.I. 24, at 29-

---

24-25, FEMA more than adequately explained this. Moreover, nothing in the Court's order suggested FEMA could not use this method.

30. First, Plaintiff suggests that this Court could rule *as a matter of law* that FEMA cannot identify the existence of a PFD, citing—without further explanation—*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). But *Kisor* is about when courts defer to agencies' reasonable interpretations of genuinely ambiguous regulations. *Id.* at 2408. Plaintiff has not explained how it has any applicability in this case, where neither side has argued that the regulations are ambiguous. Even if the Court concluded FEMA's delineation of the PFD in this case was arbitrary or capricious, Plaintiff's requested relief would "contravene[] this [C]ourt's limited role by requiring it to substitute [its] judgment for that of the agency." *Bintz I*, 413 F. Supp. 3d at 368.

Second, Plaintiff argues that this Court may impose a 90-day time restriction on FEMA as relief for FEMA's unreasonable delay. Even setting aside his failure to show any unreasonable delay, there is no basis under the APA for imposing such a restriction.[9]

Third, Plaintiff claims that he can seek refunds on behalf of unnamed, non-party South Bethany property owners as relief for FEMA's alleged violation of the mandate rule. But Plaintiff cites no case in which the mandate rule has been applied in the way he asks this Court to do. And even if it could, Plaintiff does not have standing to seek this relief. For the first time in his reply brief, Plaintiff asserts a reputational injury. D.I. 25, at 17. Prior to this moment, Plaintiff's alleged injuries revolved around his property rights. *See, e.g.*, D.I. 1, at ¶¶ 27, 46.[10] And Plaintiff's one-sentence argument in his reply does not come close to establishing the elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that on summary judgment a party cannot rest on "mere allegations," but must set forth through affidavits or other evidence specific facts

---

[9] Further, imposing a 90-day timeline on FEMA is entirely unfeasible given the time it takes create a new flood hazard analysis and engage in statutorily required consultation.

[10] Indeed, pursuant to the NFIA, there is a limited waiver of sovereign immunity and only those with a property interest can challenge a flood hazard determination. 42 U.S.C. § 4104(b), (g).

establishing standing).[11] In particular, he cannot show the required "concrete" reputational injury based on a single sentence in a single email that his neighbors were angry with him. *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021). Moreover, Plaintiff has a serious redressability problem—it is not clear how paying money to Plaintiff's neighbors would redress any reputational harm Plaintiff alleges he suffered.[12]

Finally, Plaintiff contends that he is entitled to reimbursement of fees because last time, *after* the Court's remand in *Bintz I,* FEMA agreed to reimburse him. As already briefed, Plaintiff may only be reimbursed for expenses incurred incident to a *successful* administrative appeal. 42 U.S.C. § 4104(f). He has not been successful and is entitled to nothing in the way of reimbursement. That FEMA agreed to do something before after remand does not change this.

## III. CONCLUSION

For the all the reasons set forth above and in the government's opening brief, the Court should grant summary judgment in favor of the government.

Respectfully submitted,

DAVID C. WEISS

*/s/ Claudia L. Pare*
Claudia L. Pare
Assistant United States Attorney

[11] Moreover, contrary to Plaintiff's assertion otherwise, third-party standing is not appropriate in this case. In particular, Plaintiff has not demonstrated that he has the requisite "close relationship" with his neighbors. Nor has he demonstrated that the cost of litigation would hinder his neighbors' ability to protect their interests—especially where they could have, for example, joined Plaintiff's existing suit or sued *pro se* as Plaintiff did.

[12] This remedy also makes no sense for a host of reasons. Many property owners do not pay insurance premiums to FEMA; they pay premiums to third-party insurance companies. Nor can Plaintiff show that there were any "excess" payments or what the "invalid excess premiums" would be. That is particularly true in the context of Risk Rating 2.0 in which flood insurance premium rates are now based on the property-specific risk, and not any particular LOMR or BFE. D.I. 24, at 30 n.28. Indeed, FEMA understands that Plaintiff's own premiums have decreased by several thousand dollars (or by over 75% since their peak in 2010).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EDWARD E. BINTZ,<br><br>Plaintiff,<br><br>v.<br><br>THE FEDERAL EMERGENCY MANAGEMENT AGENCY, THE DEPARTMENT OF HOMELAND SECURITY, and DEANNE CRISWELL,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 22-738-GBW |

**CERTIFICATE OF SERVICE**

I, Kimberly Rechner, an employee with the United States Attorney's Office, hereby certify that on the 20th day of September 2023, I caused to be electronically filed:

**DEFENDANTS' REPLY BRIEF**
**IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

with the Clerk of the Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF. I further certify two copies of said document to be served via U.S. mail upon:

Edward E. Bintz
922 N. Cleveland St.
Arlington, VA 22201
PRO SE

*/s/ Kimberly Rechner*
Kimberly Rechner